**Bruce N. EDDY, D.D.S.,
Appellant (Plaintiff),**

v.

**Ray K. OUKROP, D.D.S.,
Appellee (Defendant).**

**No. 89–170.**

Supreme Court of Wyoming.

Dec. 26, 1989.

---

Michael D. Zwickl, Casper, for appellant.

J. Patrick Hand, Douglas, for appellee.

Before CARDINE, C.J., THOMAS, MACY and GOLDEN, JJ., and ROONEY, Retired J.

ROONEY, Retired Justice.

This appeal is from an order of the district court dismissing appellant's complaint together with its cause for lack of jurisdiction over the person of appellee.[1] Since personal jurisdiction exists by virtue of Wyoming's "long arm" statute,[2] we reverse and remand.

The complaint contains two claims for relief: one for $59,720.38 plus interest due under a promissory note executed by appellee, and one for accounting and payment of rental proceeds from real property (condominium units) jointly owned by the parties in Travis County, Texas.

On March 1, 1980, appellee entered into a contract with appellant and E.C. Cates[3] wherein appellant and Cates agreed to set over to appellee one-third of their interest in the Texas real property, and wherein appellee agreed to transfer ownership of an airplane from him to appellant and Cates and wherein he agreed to execute and deliver to them his promissory note payable in three years. The contract provided that the rental income from the real

property would be divided, after expenses, one-third to appellant, one-third to appellee, and one-third to Cates.

Appellee executed and delivered the promissory note in the amount of $35,000 principal, and he made two payments thereon: one in March 1980 in the amount of $3,769.92, and one in March 1981 in the amount of $3,146.16. That necessary for conveyance of the airplane and for transfer of the one-third interest in the real property was executed and delivered.

In *Anderson v. Perry*, 667 P.2d 1155, 1157 (Wyo.1983), we said:

"We set forth the applicable standard for deciding when in personam jurisdiction exists in *Markby v. St. Anthony Hospital Systems*, Wyo., 647 P.2d 1068 (1982). Since we thoroughly discussed the development of the United States Supreme Court cases and the background of our own law, it is only necessary now to discuss the requirements which we have established. Along with the considerations listed in *Ford Motor Company v. Arguello*, Wyo., 382 P.2d 886 (1963), we determined that the present outer limits of personal jurisdiction, based on a single act, would be determined by three factors:

"1. ' * * * [T]he defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. * * *'

"2. ' * * * [T]he cause of action must arise from the consequences in the forum state of the defendant's activities. * * *'

"3. ' * * * [T]he activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.' *Markby, supra* at 1073."

---

1. Appellee appeared only for the purpose of contesting personal jurisdiction.

2. W.S. 5-1-107(a) provides:
    "A Wyoming court may exercise jurisdiction on any basis not inconsistent with the Wyoming or United States constitution."

3. E.C. Cates subsequently assigned and set over to appellant all of his right, title and interest in the contract, property and note involved in this matter.

The reference to *Ford Motor Company. v. Arguello*, 382 P.2d 886, 895 (1963) states:

"In any event, it seems clear to us that under the pronouncements made there emerges the general rule that so long as the activities of a foreign corporation are sufficiently qualitative in nature and extent reasonably to show 'minimal contacts' with the state and state law on the subject is justly construed and applied to reach those activities for jurisdictional purposes under 'traditional notions of fair play and substantial justice,' all demands of due process are satisfied."

In *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir.1989), a case decided as recently as August 31, 1989, the three factors are stated as follows:

"We must make three inquiries: (1) whether Smith and Miller [defendants] purposefully directed their activities toward or consummated some transaction with the forum or residents thereof; (2) whether the claim made by Davis [plaintiff] arises out of the defendants' forum-related activities; and (3) whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Haisten [v. Grass Valley Medical Reimbursement Fund, Ltd.]*, 784 F.2d [1392,] 1397 [9th Cir. 1986]; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–76, 105 S.Ct. 2174, 2181–2184, 85 L.Ed.2d 528 (1985)."

■ Accordingly, two preliminary observations are pertinent: one, in applying either the "standard" or the "minimal contacts" test, there is no need to be concerned with any balancing of actions, consequences, and contacts between jurisdictions because one needs only to identify the presence of pertinent factors within the forum state; and two, the existence of personal jurisdiction is a question of law when the underlying facts are undisputed.

**4.** *Anderson*, 667 P.2d at 1157.

**5.** *Davis*, 885 F.2d at 520.

**6.** This is not to say that the place at which a contract is made, by itself, is sufficient for personal jurisdiction. "Insofar as subject-matter jurisdiction is concerned, the general rule is that when a suit is based upon a contract, as in this case, the action is transitory and may be determined by any court which can obtain jurisdiction on the person without regard to its place of execution or performance." *Booth v. Magee Carpet Company*, 548 P.2d 1252, 1256 (Wyo. 1976). It is an item to be considered in determining the existence of the factors necessary for jurisdiction under the "long arm" statute.

*Davis*, 885 F.2d 515; *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392 (9th Cir.1986).

■ The three factors necessary for personal jurisdiction by the Wyoming courts under the "long arm" statute are present in this case.

## FIRST FACTOR

The following items reflect that appellee "purposefully avail[ed] himself of the privilege of acting"[4] in Wyoming, i.e., he "purposefully directed [his] activities toward or consummated some transaction with the forum or residents thereof"[5]:

1. While a Wyoming resident, he entered into the contract in Wyoming with Wyoming residents.[6]

2. He executed and delivered the promissory note in Wyoming pursuant to the contract.

3. He transferred ownership of the airplane in Wyoming pursuant to the contract.

4. He made two payments under the note in Wyoming.

5. The instruments transferring one-third ownership in the Texas property to him were executed in Wyoming and delivered to him in Wyoming.

The first factor contains alternative requirements: *acting* in the forum state or *causing important consequences* in the forum state. The five items listed *supra* not only reflect actions in Wyoming, but they also indicate important consequences caused by appellee in Wyoming. Obviously, additional important consequences in Wyoming were: failure to receive payment under the note and failure to receive payment of a share of the rentals from the Texas property—both caused by appellee.

## SECOND FACTOR

These same items reflecting the presence of the first factor necessary for personal jurisdiction under the "long arm" statute also reflect the presence of the second necessary factor.

The five items listed *supra* together with appellee's failure to make the indicated payments are the "consequences [of appellee's activities] in the forum state"[7] upon which the cause of action is premised, i.e., the claim "arises out of the defendants' [appellees'] forum-related activities."[8]

## THIRD FACTOR

The third factor requires the activities of appellee or the consequences thereof to have "a substantial enough connection with the forum state to make the exercise of jurisdiction * * * reasonable,"[9] i.e., the "exercise of jurisdiction [must comport] with traditional notions of fair play and substantial justice."[10] Again, the items referred to *supra* in connection with the other required factors reflect the "substantial connection" between Wyoming and appellee's activities or the consequences thereof.

Certainly, that part of this matter having to do with the promissory note and payment or lack of payment on it has nothing to do with any state other than Wyoming excepting the fact that appellee moved from Wyoming to Texas in 1986. The claim on the note has more than "substantial connections" with Wyoming, its *only* connection is with Wyoming—other than appellee's changed residence. Since the note is a result of an undertaking in the same contract which established the joint ownership of the Texas property, and since the amount due on the note may be offset by a negative balance to appellant on an accounting for rentals, it is "reasonable" and in keeping with "traditional notions of fair play and substantial justice"[11] that the

entire matter be handled and disposed of in the Wyoming courts.

Said another way, the transfer of one-third interest in the Texas property was only one part of the consideration contained in the contract. The transfer of ownership of the airplane and the promissory note were also part of the consideration. All issues which may arise under the transaction are best handled in a single forum. This fact was underscored by the following recital in the contract between the parties:

"WHEREAS, the parties hereto have agreed to trade and exchange property of equal value, and execute this agreement to set forth their respective agreements and understandings."

The obvious intent and expectation of the parties when the contract was entered into was that not only "minimal" but "substantial" contacts between the parties had occurred and would occur in Wyoming. Until appellee moved to Texas, there can be no question but that the activities of appellee were "sufficiently qualitative in nature and extent * * * to show 'minimal contacts' with the state"[12] of Wyoming. Aside from the allegations of non-performance by appellee under the contract and note, the present record reflects the only material change in the status of the parties since the execution of the contract as it pertains to the issue here presented is appellee's change of residence from Wyoming to Texas.

Although a portion of the contract concerned real property in Texas, the relationship established by it with reference to its subject matter was one between residents of Wyoming. The parties contemplated the relationship to be subject to Wyoming law. The contract provided in part:

"8) * * * This Agreement shall be construed under the laws of the State of Wyoming[.]"

**7.** *Anderson,* 667 P.2d at 1157.

**8.** *Davis,* 885 F.2d at 520.

**9.** *Anderson,* 667 P.2d at 1157.

**10.** *Davis,* 885 F.2d at 520.

**11.** *Id.*

**12.** *Ford Motor Company,* 382 P.2d at 895.

Courts other than Wyoming courts may apply Wyoming law, but the expressed intent and contemplation of the parties reinforce the separate determination that the exercise of jurisdiction by the Wyoming courts in this instance "comports with traditional notions of fair play and substantial justice,"[13] and such exercise is reasonable in view of the substantial connection of appellee's activities and of the consequences of those activities with Wyoming—the requirements of the third factor set out in *Anderson,* 667 P.2d 1155.

Reversed and remanded with instruction to exercise personal jurisdiction over appellee.

CARDINE, C.J., dissents.

CARDINE, Chief Justice, dissenting.

I would affirm. I cannot say the trial judge was clearly wrong in this case in holding it unfair and unreasonable to exercise personal jurisdiction over this nonresident defendant. With the exception of payment of a promissory note, the agreements of the parties have been performed. All that is left is a suit upon the promissory note of a defendant residing in Texas concerning real estate located in the state of Texas.