Argued and submitted May 1, decision of the Court of Appeals affirmed on different grounds; judgment of the circuit court affirmed September 8, 1995

George SUTHERLAND,
Conservator for Helen B. Sutherland,
*Petitioner on Review,*

*v.*

Enda BRENNAN,
*Respondent on Review.*

(CC 9210-07134; CA A80719; SC S41835)

901 P2d 240

Frank H. Hilton, Jr., of Schwab, Hilton, & Howard, Portland, argued the cause for petitioner on review. With him on the brief was Maureen J. Michael.

Gregory B. Snook, of Kilmer, Voorhees & Laurick, P.C., Portland, argued the cause and filed the brief for respondent on review.

Helen T. Dziuba, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The issue in this case is whether the trial court properly granted defendant's motion to dismiss plaintiff's complaint for lack of personal jurisdiction. ORCP 21 A.[1] A divided Court of Appeals, sitting *in banc*, affirmed the decision of the trial court. *Sutherland v. Brennan*, 131 Or App 25, 883 P2d 1318 (1994). For the reasons that follow, we also affirm, but on different grounds from those relied on by the Court of Appeals.

In October 1992, plaintiff, acting as conservator of the estate of his sister, filed a complaint in the circuit court against defendant, a lawyer practicing in California, claiming conversion of funds given by plaintiff's sister to defendant's client, Morrow. The complaint alleges in part:

"This court has jurisdiction over this matter pursuant to ORCP 4 A(4) as defendant owns substantial property within the State of Oregon."[2]

Defendant moved to dismiss the complaint, arguing that the court lacked personal jurisdiction over him. The court granted the motion and gave plaintiff the opportunity to replead.

Plaintiff filed an amended complaint, adding claims for breach of contract, breach of fiduciary duty, and money had and received and alleging in part:

---

[1] ORCP 21 A provides in part:

"Every defense, in law or fact, to a claim for relief in any pleading, whether a complaint, counterclaim, cross-claim or third party claim, shall be asserted in the responsive pleading thereto, except that the following defenses may at the option of the pleader be made by motion to dismiss: * * * (2) lack of jurisdiction over the person * * *."

[2] ORCP 4 A provides:

"A court of this state having jurisdiction of the subject matter has jurisdiction over a party served in an action pursuant to Rule 7 under any of the following circumstances:

"A. In any action, whether arising within or without this state, against a defendant who when the action is commenced:

"* * * * *

"(4) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise[.]"

"This court has jurisdiction of this matter pursuant to ORCP 4 C and ORCP 4 L."[3]

The amended complaint also contains the following factual allegations:

"2.

"On or about May 12, 1992, [plaintiff] went to Half Moon Bay, California, to pick up his sister, Helen Sutherland, for a trip to Oregon. He was unable to locate Helen Sutherland and learned that she was being kept from him by an individual named Stephen Morrow, who was defendant Enda Brennan's client. He further learned that while in the company of Helen Sutherland, Mr. Morrow had Ms. Sutherland sign a check over to Mr. Morrow in the amount of $40,000.

"3.

"At [plaintiff's] prompting, the Mountain View Police Department became involved and called Stephen Morrow in for questioning. Mr. Morrow admitted to police agent, Steven Bergquist, that the $40,000 belonged to Helen Sutherland and turned the check for $40,000 over to his attorney, Enda Brennan, for safe keeping. Mr. Brennan opened a trust account for these funds and forwarded to police agent, Bergquist, a copy of the passbook showing the deposit into the trust account of the $40,000.

"4.

"After depositing the funds into his trust account for safe keeping, defendant Enda Brennan made several telephone calls to plaintiff's attorney, Scott Howard, in Oregon. During these conversations, defendant Brennan repeatedly represented to and assured plaintiff's attorney that defendant was aware that the funds belonged to Helen Sutherland and that a conservatorship in Oregon was being established for

---

[3] ORCP 4 C and L provide:

"A court of this state having jurisdiction of the subject matter has jurisdiction over a party served in an action pursuant to Rule 7 under any of the following circumstances:

"* * * * *

"C. In any action claiming injury to person or property within this state arising out of an act or omission within this state by the defendant.

"* * * * *

"L. Notwithstanding a failure to satisfy the requirements of sections B through K of this rule, in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."

receipt of the $40,000 held by defendant. Defendant further represented to plaintiff's attorney that he would not release the trust funds to his client, Stephen Morrow, but would instead hold the funds for Helen Sutherland pending establishment of the conservatorship. Defendant stated to attorney Howard that when the conservatorship was established in Oregon, defendant would release the funds to plaintiff for deposit into the Oregon conservatorship account.

"5.

"On September 14, 1992, George Sutherland was duly appointed conservator for the estate of Helen B. Sutherland (Multnomah County Circuit Court No. 92208-91366). On or about September 15, 1992, plaintiff's attorney wrote defendant Brennan advising him that the conservatorship had been established, sending him a copy of the conservator's letters and requesting Ms. Sutherland's funds be forwarded to George Sutherland the conservator in Oregon.

"6.

"Defendant did not respond to the letter sent by plaintiff's attorney notifying him that the conservatorship had been established in Oregon. When plaintiff's attorney finally spoke with defendant by telephone, defendant stated that Stephen Morrow now took the position that the $40,000 received from Ms. Sutherland was a 'gift.' From that conversation up until the present, defendant has failed and refused and continues to fail and refuse to deliver the funds held by him in trust for Helen B. Sutherland to the conservatorship established on her behalf, and plaintiff is informed that defendant Brennan has released the $40,000 to Stephen Morrow."

Defendant again moved to dismiss based on lack of personal jurisdiction. Defendant's attached affidavit stated in part:

"2.   I am a resident of Santa Cruz, California, and am licensed to practice law in California. I am not licensed nor have I practiced law in Oregon.

"3.   I own real property in the State of Oregon.

"4.   The subject matter of this lawsuit is in no way whatsoever related to the real property I own in Oregon.

"5.   In my capacity as a California attorney, I received funds from a longstanding client to be placed in my trust account. The client in question, Steve Morrow, is a California

resident. I received the funds from Mr. Morrow, not Ms. Sutherland, in Santa Cruz, California, and placed them in my Santa Cruz, California, trust account.

"6. I participated in several telephone calls with Mr. Howard of Oregon because Mr. Howard demanded that Mr. Morrow have his attorney contact him. I never told Mr. Howard that I believed the money to be Ms. Sutherland's. I did tell Mr. Howard that if a court ordered the funds delivered to a Sutherland conservatorship, I would attempt to get my client to comply. I did not say I would hold the funds indefinitely or for Ms. Sutherland.

"7. I am informed by my client and by plaintiff's attorney, Mr. Howard, that these funds, $40,000, were provided to Mr. Morrow by the California resident, Helen Sutherland.

"8. The funds in question remained in my California trust account until my client, Mr. Morrow, made written demand for their return. I followed the instructions and transferred the funds to Mr. Morrow in Santa Cruz, California.

"9. At the time of the transfer of funds back to Mr. Morrow, I had no knowledge, written or otherwise, of a demand by an Oregon established conservatorship for the funds."

In response, plaintiff submitted an affidavit from the California police officer who had investigated plaintiff's initial report and had arrested Mr. Morrow. That affidavit provides in part:

"3. On May 28, 1992, I received a call from defendant Enda Brennan. He informed me that he was a close friend and also the attorney of Steven Morrow. During that phone conversation, I informed defendant Brennan that a criminal investigation was pending concerning the identification of the rightful owner of the $40,000.00 I also suggested that because the funds were considered evidence of a criminal investigation the Mountain View Police Department should hold the funds in its evidence locker. Defendant Brennan assured me that the funds had been deposited into his trust fund for safe keeping and that he would act as the secured representative of the funds pending identification of their rightful owner. I further informed defendant Brennan that due to the criminal investigation I needed to know where the funds were being held. Later that day, he responded by faxing me a copy of the passbook showing the deposit of $40,000.00 into a trust account.

"4. On June 16, 1992; defendant Brennan telephoned me and left a voice mail message informing me that he was in contact with Scott Howard in Portland and that defendant Brennan would not release the funds to Mr. Morrow without first notifying Scott Howard and the Sutherland family.

"* * * * *

"6. * * * [D]uring the December 18, 1992, interrogation, Steven Morrow informed me that on or about October, 1992, defendant Brennan had withdrawn the $40,000 from the trust account and released it to Steven Morrow in the form of a cashier's check."

After hearing oral argument, the circuit court granted defendant's motion to dismiss.[4]

Plaintiff appealed, arguing that personal jurisdiction over defendant was proper under ORCP 4 A(4), 4 C, or 4 L. The Court of Appeals rejected plaintiff's argument under ORCP 4 C on the grounds that no act or omission by defendant occurred within the state of Oregon and that there was no allegation that plaintiff had acted in reasonable reliance on defendant's representations and had suffered an injury in Oregon. *Sutherland*, 131 Or App at 29-30. Rejecting plaintiff's argument that jurisdiction was proper under ORCP 4 A(4), that court stated that "the bare fact of real estate holdings, without more, cannot serve as the basis for establishing personal jurisdiction in an action that neither arises out of, nor relates to, defendant's property ownership." *Id.* at 30 (citations omitted). Finally, the court rejected plaintiff's arguments under ORCP 4 L, Oregon's "catch-all" jurisdictional rule, on the ground that defendant's activities within Oregon did not provide a sufficiently substantial connection to the state to permit an Oregon court to exercise personal jurisdiction. *Id.* at 31.

The point on which the Court of Appeals majority and dissent diverged, however, was their treatment of the factual allegations in the pleadings and the parties' affidavits. The majority stated:

"[P]ersonal jurisdiction in this case depends upon the existence of an oral contract to deliver funds to an Oregon conservatorship. In other words, if no promise was made by

---

[4] No record was kept of the oral proceedings.

defendant and reasonably relied on by plaintiff, there is no basis for an Oregon court to exercise jurisdiction over defendant. Given that the two participants in the telephone conversations have proffered divergent accounts of those conversations, the existence of a promise can only be determined by making a credibility determination. In this case, the trial judge found defendant to be more credible, no doubt because of the improbability of a scenario in which one attorney relies on the oral promise of a second attorney that the second attorney will take his client's money out of a client trust fund and give it to the first attorney's client, believing that the latter is the rightful owner of the funds. The trial court was authorized to make that finding pursuant to ORCP 21 A, which provides that the court 'may determine the existence or nonexistence of the facts supporting [a lack of personal jurisdiction] defense.' " *Id.* at 32 (footnotes omitted).

In contrast, the dissent stated:

"The majority reaches its result by ignoring the allegations in the complaint and focusing on defendant's affidavit. For purposes of a motion under ORCP 21 A(2), we are required to assume the truth of all of the allegations in the complaint and any facts that might conceivably be adduced as proof of such allegations. *See Brennen v. City of Eugene*, 285 Or 401, 405, 591 P2d 719 (1979)." *Id.* at 36 (Edmonds, J., dissenting).

The dissent concluded that the majority erred in holding that ORCP 21 A allows a court to determine personal jurisdiction "by making a finding that an affiant's information in an affidavit is more credible than the allegations in a plaintiff's complaint." *Id.* at 37.

Plaintiff petitioned for review, contending that the Court of Appeals majority erred in determining that the trial court could dismiss a complaint for lack of personal jurisdiction based on a determination that the information in defendant's affidavit was more credible than the allegations in plaintiff's complaint. Plaintiff argues that that approach is at odds with the rule of law that, when a trial court reviews a motion to dismiss under ORCP 21 A, it is required to assume the truth of all plaintiff's well-pleaded allegations. *See, e.g., Stringer v. Car Data Systems, Inc.*, 314 Or 576, 584, 841 P2d 1183 (1992) (so noting under ORCP 21 A(8)).

Defendant responds that the plain wording of ORCP 21 A allows the trial court to make such credibility findings and suggests that, because the rule leaves that matter to the discretion of the trial court, this court should review the trial court's decision only for abuse of discretion.

The Court of Appeals and the parties have proceeded on the assumption that the foregoing question under ORCP 21 A must be addressed, because the trial court made a credibility determination in favor of defendant when it determined that the action should be dismissed for lack of personal jurisdiction. We conclude, however, that that assumption was irrelevant, because, under *any* version of the facts asserted by any party, the trial court lacked personal jurisdiction over defendant.

The Court of Appeals stated that "personal jurisdiction in this case depends upon the existence of an oral contract to deliver funds to an Oregon conservatorship. In other words, if no promise was made by defendant and reasonably relied on by plaintiff, there is no basis for an Oregon court to exercise jurisdiction over defendant." *Sutherland*, 131 Or App at 32. To the extent that Oregon might have personal jurisdiction over defendant under ORCP 4 L,[5] we agree that it must be based on defendant's telephone contacts with plaintiff's lawyer regarding the funds in the trust account.[6] We need not, however, begin with the factual question of whether a promise actually was made.

■ Long-arm jurisdiction under ORCP 4 L is considered a "catchall," applicable to those instances in which the facts alleged by the plaintiff do not bring the case within one of the specific provisions of ORCP 4. This court has stated:

"In determining whether a court may exercise jurisdiction over a defendant under ORCP 4 L, this court is guided by decisions of the Supreme Court of the United States regarding the constitutionality of such exercise under the Due

---

[5] Plaintiff has made no separate argument to this court regarding ORCP 4 A(4) or 4 C.

[6] We express no opinion as to whether plaintiff has sufficiently alleged the existence of a contract. Plaintiff makes no separate argument regarding the claims for conversion and money had and received claims.

Process Clause of the Fourteenth Amendment to the Constitution of the United States. *See State ex rel Jones v. Crookham*, 296 Or 735, 742, 681 P2d 103 (1984) (Linde, J., concurring) (because Oregon does not have a due process clause in its state constitution, ORCP 4 L means, in practice, that an Oregon court has jurisdiction to the limits of due process under the Fourteenth Amendment; those limits are 'an issue of federal law to be decided pursuant to the controlling decisions of the United States Supreme Court')." *State ex rel Circus Circus Reno, Inc. v. Pope*, 317 Or 151, 156, 854 P2d 461 (1993) (footnotes omitted).

Because the issue is guided by federal law, we have examined the relevant decisions of the Supreme Court of the United States.

■ Most helpful to our inquiry in the present case is the Court's decision in *Burger King Corp. v. Rudzewicz*, 471 US 462, 105 S Ct 2174, 85 L Ed 2d 528 (1985). In that case, the Court analyzed the question of whether a state could exercise jurisdiction over a breach of contract action on the ground that the defendants had breached a contract in the forum state by failing to perform acts required by the contract to be performed there. *Id.* at 468. The Court emphasized that the first inquiry is into whether a defendant has purposefully established minimum contacts within the forum state. *Id.* at 475-76. The Court reiterated its conclusions from earlier cases that it must be the defendant that creates the connections with the forum state, such as creating continuing obligations between the defendant and a resident of the forum. In such situations, a defendant "has availed himself of the privilege of conducting business [in the forum state], and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* at 476 (internal quotation marks omitted).

■ Only after a court has made the preliminary determination that a defendant has purposefully established minimum contacts within the forum does the court consider other factors, such as the forum state's interest in the dispute, the plaintiff's interest, and the like. *Id.* at 476-77. Although concluding that sufficient minimum contacts did exist in *Burger King Corp.*, the Court made the following remarks:

"If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot. * * * [W]e have emphasized the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors — prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing — that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 478-79 (emphasis in original; citations and internal quotations marks omitted).

Factors that led the Court to determine that personal jurisdiction existed in *Burger King Corp.* included: that the defendant had sought out the corporation in the forum state and negotiated for the purchase of a long-term franchise, that the franchise agreement included terms regarding regulation of the franchise by the headquarters in the forum state, and that the agreement contained a provision that the laws of the forum state would govern the agreement. *Id.* at 479-81.[7]

With that case in mind, we turn to the present case to determine whether defendant had sufficient "minimum contacts" with Oregon to allow for personal jurisdiction under any version of the facts. Looking to the complaint and the facts from the affidavits, between May and September 1992, defendant, in his capacity as a lawyer practicing in California and at his client's request, made several telephone calls to plaintiff's lawyer in Oregon, to discuss the funds held in defendant's client trust account. According to plaintiff's complaint, defendant made promises during those telephone conversations about his handling of those funds and failed to fulfill his obligations when he released the funds to his California client rather than to the Oregon conservatorship. During the course of his representation of his California client, defendant became aware of the claim on these funds by

---

[7] *See* Annotation, *"Minimum Contacts" Requirements of Fourteenth Amendment's Due Process Clause (Rule of International Shoe Co. v. Washington) for State Court's Assertion of Jurisdiction Over Nonresident Defendant,* 62 L Ed 2d 853 (1981 Supp 1994).

an Oregon interest. According to plaintiff, by telephoning plaintiff's lawyer in Oregon, defendant created a connection between himself and Oregon, the forum state.

■      However, even assuming that defendant undertook an obligation to plaintiff during those conversations about the funds, this creation of an obligation alone does not establish sufficient minimum contacts. *See id.* at 478 (so indicating). Whatever the nature of the agreement, it clearly concerned an isolated transaction — a one-time disposition of certain funds held in a client trust account in California. Furthermore, it would seem to be fortuitous that the connection was with Oregon; under these circumstances, it is just as likely that a California lawyer would make similar contact with an interested party in any other state. Unlike the situation in *Burger King Corp.*, there was no contemplated ongoing interstate business relationship between the parties here. *Compare State ex rel White Lbr. v. Sulmonetti*, 252 Or 121, 123-36, 448 P2d 571 (1968) (when a wholesaler who had purchased wood from an Oregon company in the past had telephoned a new order, resulting in wood being shipped to wholesaler from Oregon, there were sufficient contacts to subject wholesaler to breach of contract action in Oregon).

Also, there are no facts from which it could be concluded that, by contacting plaintiff's lawyer, defendant "availed himself of the privilege of conducting business" in Oregon and, thus, had his activities "shielded by the benefits and protections of the forum's laws." *Burger King Corp.*, 471 US at 476. In fact, considering that a California lawyer's handling of funds in a California client trust account is undoubtedly subject to numerous strictures of California law, it is difficult to understand how defendant purposefully might avail himself of the protections of Oregon law regarding the subject matter of this action.

In sum, we conclude that the circuit court's decision regarding lack of personal jurisdiction was correct under any version of the facts placed in the record by the parties. We therefore are able to affirm its decision.

The decision of the Court of Appeals is affirmed on different grounds. The judgment of the circuit court is affirmed.