Carol A. O'BRYAN, formerly Carol A. McDonald; and Cody McDonald, Appellants (Plaintiffs),

v.

Michael R. McDONALD, Appellee (Defendant).

No. 96–295.

Supreme Court of Wyoming.

Jan. 7, 1998.

Anthony T. Wendtland of Davis & Cannon, Sheridan, for Appellants.

Brian N. Beisher of Hart & Reiter, Sheridan, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

LEHMAN, Justice.

Appellants, Carol O'Bryan (Ms. O'Bryan) and her adult son, Cody McDonald (Cody), appeal from the district court's determination that it lacked personal jurisdiction over appellee, Michael McDonald (Mr. McDonald), and the resulting dismissal of their complaint. We affirm.

Ms. O'Bryan and Cody state the issue for review as:

A. Can the Wyoming District Court exercise personal jurisdiction over a Texas resident on a claim by his ex-wife and adult son for breach of contract, breach of implied contract or unjust enrichment?

## FACTS

Ms. O'Bryan and Mr. McDonald were divorced in New Mexico in 1983. Cody is the natural child of Ms. O'Bryan and Mr. McDonald, born on November 19, 1976. After the divorce, Ms. O'Bryan and Mr. McDonald individually moved to Houston, Texas. In 1992, Ms. O'Bryan moved from Texas to Wyoming with Cody, who was then 14 years old. Mr. McDonald remained in Texas, where he resided when this suit was commenced.

By virtue of a judgment and order in the divorce proceeding, Mr. McDonald was obligated to pay child support for Cody and his older sister, Michelle, until each child reached the age of majority. In 1992, after the move to Wyoming, Ms. O'Bryan requested from Mr. McDonald copies of his 1991 tax returns. After reviewing those returns, Ms. O'Bryan contacted Mr. McDonald and told him it was her opinion that she could seek an increase in child support in New Mexico that would likely raise Mr. McDonald's child support obligation significantly. At that time, Michelle had reached the age of majority and Mr. McDonald was paying $250 per month for Cody's support plus $91 a month towards a life insurance policy in accordance with the order entered by the New Mexico court.

Ms. O'Bryan and Mr. McDonald reached an agreement, whereby Mr. McDonald would send $400 a month for Cody's support and would continue to pay the $91 a month for the life insurance through May 1995, when Cody was to graduate from high school.[1] In addition, Mr. McDonald agreed to buy Cody a truck in the $6,500 price range in the spring of 1993 and to help with Cody's college expenses. In exchange, Ms. O'Bryan agreed not to initiate legal proceedings in New Mexico to increase Mr. McDonald's support obligation. Ms. O'Bryan reduced the proposed terms to writing in a typewritten letter to Mr. McDonald dated October 1, 1992, and mailed the letter to Mr. McDonald in Texas. Mr. McDonald did not respond to the letter; however, he did send the increased amount for child support and bought Cody a truck. He also paid half of Cody's tuition, books, room, board, and certain expenses after he started attending the University of Wyoming. He refused, however, to pay half of Cody's car repair expenses, car

---

1. Under this arrangement, the child support payments were to continue beyond Cody's eighteenth birthday on November 19, 1994.

insurance, medical bills, and weekly allowance.

Mr. McDonald's refusal to pay those expenses is the basis of this lawsuit. The complaint alleges that Ms. O'Bryan entered into an oral contract with Mr. McDonald in 1992 and that Cody was an intended third party beneficiary of the contract. Ms. O'Bryan claims that the contract required Mr. McDonald to pay half of all Cody's college expenses and that he only partially performed on the contract. The complaint also states claims to recover damages for an implied-in-fact contract or, alternatively, for unjust enrichment. Mr. McDonald disputes the existence of an enforceable contract.

Mr. McDonald, acting through Wyoming counsel, moved to dismiss based on a lack of personal jurisdiction. The district court conducted an evidentiary hearing, at which Ms. O'Bryan, Cody, and Mr. McDonald testified. At the close of the hearing, the court granted the motion to dismiss, finding that Mr. McDonald's contacts with the State of Wyoming were almost nonexistent and tenuous at best and did not form a sufficient nexus with the state to permit the court to exercise personal jurisdiction over Mr. McDonald. Ms. O'Bryan and Cody timely appeal the Order Granting Motion to Dismiss and Dismissing Complaint.

### STANDARD OF REVIEW

The question of in personam jurisdiction is a mixed question of law and fact that, if disputed, must be resolved before a matter can proceed. *Citibank, N.A. v. Estate of Simpson*, 290 N.J.Super. 519, 676 A.2d 172, 178 (1996). The district court has considerable leeway in deciding a pretrial motion to dismiss for lack of personal jurisdiction. *PanAmerican Mineral Svcs., Inc. v. KLS Enviro Resources, Inc.*, 916 P.2d 986, 989 (Wyo.1996). The court may determine the matter on the basis of pleadings and other materials called to its attention; it may require discovery; or it may conduct an evidentiary hearing. *Id.* The procedural path the district court chooses to follow determines the plaintiff's burden of proof and the standard to be applied on appeal. *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364

(2d Cir.1986), *see also PanAmerican*, 916 P.2d at 989. When the court holds an evidentiary hearing on the merits of the motion, as here, the plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence. *See PanAmerican*, 916 P.2d at 989. The district court's factual findings must be accepted unless clearly erroneous, but the ultimate question of whether personal jurisdiction can properly be exercised is a question of law to be reviewed de novo. *CutCo*, 806 F.2d at 365; *see also Eddy v. Oukrop*, 784 P.2d 610, 612 (Wyo.1989).

The relevant facts in this case are basically uncontroverted. The parties do, however, dispute whether the agreement between Ms. O'Bryan and Mr. McDonald comprised an enforceable contract, which goes to the substantive merits of the case. The court did not resolve that dispute at the evidentiary hearing, finding it unnecessary to determine if a contract existed to answer the jurisdictional question. Although the court suggested the evidence showed there was a contract between the parties, it concluded nonetheless that Mr. McDonald had insufficient contacts with Wyoming to support the exercise of personal jurisdiction over him in this lawsuit. We review de novo the question of whether the district court can assert personal jurisdiction over Mr. McDonald.

### DISCUSSION

Wyoming courts are authorized by statute to exercise personal jurisdiction over defendants on any basis which is not inconsistent with the Wyoming or United States constitutions. W.S. 5–1–107(a) (1997). The Due Process Clause of the Fourteenth Amendment to the United States Constitution operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants. *Markby v. St. Anthony Hosp. Sys.*, 647 P.2d 1068, 1070–71 (Wyo.1982); *Kulko v. Superior Court of California*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978). Due process requires that, in order to subject a defendant to the forum's exercise of personal jurisdiction, the defendant must have at least minimum contacts with the forum state such that maintenance

of the suit does not offend "traditional notions of fair play and substantial justice." *Markby*, 647 P.2d at 1071 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

■ The determination of the existence of minimum contacts depends upon the particular facts of each case. *Kulko*, 436 U.S. at 92, 98 S.Ct. at 1697. In Wyoming, we apply a three-part test to define the outer limits of personal jurisdiction based on a single act: 1) the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state, 2) the cause of action must arise from the consequences in the forum state of the defendant's activities, and 3) the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *Amoco Prod. Co. v. EM Nominee Partnership Co.*, 886 P.2d 265, 267 (Wyo.1994).

■ The first element, "purposeful availment," is a threshold requirement. "[I]t is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State...." *Kulko*, 436 U.S. at 94, 98 S.Ct. at 1698 (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Unless that requirement is satisfied, jurisdiction will not be permissible, no matter how strong the interest of the plaintiff or the forum state may be in having the suit adjudicated there.[2] *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294, 100 S.Ct. 559, 565–66, 62 L.Ed.2d 490 (1980); 1 Robert C. Casad, Jurisdiction in Civil Actions § 2.05 (2d ed.1991). Stated differently, a consideration of the relative inconveniences, the state's in-terest, and other factors relevant to the overall reasonableness is appropriate only if the threshold contact requirement has been met. CASAD, *supra.*

■ Ms. O'Bryan and Cody contend that Mr. McDonald purposefully availed himself of the privilege of acting in Wyoming by voluntarily entering into a contract and partially performing on that contract in the state. It is true that execution and performance of a contract in Wyoming are important factors to be considered, and this court has found the requisite minimum contacts based on a contractual relationship in a number of cases. *See, e.g., Amoco*, 886 P.2d 265, *Eddy*, 784 P.2d 610, *Anderson v. Perry*, 667 P.2d 1155 (Wyo.1983). However, an individual's contract with an out-of-state party, by itself, does not automatically establish sufficient minimum contacts. *Eddy*, 784 P.2d at 612 n. 6 (suit based on contract is transitory and may be determined by any court which can obtain jurisdiction over the person without regard to its place of execution or performance); *Sutherland v. Brennan*, 321 Or. 520, 901 P.2d 240, 246 (1995). The district court correctly focused, not on the existence or terms of the alleged contract, but on Mr. McDonald's purposefully established contacts with Wyoming.

■ The case at bar differs in an important respect from our prior cases because it arises, not from Mr. McDonald's commercial transactions in interstate commerce, but from his personal, domestic relations. Mr. McDonald did not seek a commercial benefit from soliciting business in Wyoming, or otherwise invoke the benefits and protections of Wyoming laws. *Kulko*, 436 U.S. at 97, 98 S.Ct. at 1699. Mr. McDonald has not resided in Wyoming since his children were born, or set foot in this state since before the divorce in 1983. Ms. O'Bryan initiated the discussions with Mr. McDonald about increasing child support payments. She made all the phone calls and sent correspondence from Wyoming to Mr. McDonald in Texas. Mr. McDonald agreed to and did send money to

---

2. Similarly, failure to satisfy the second requirement of the jurisdictional test—that the cause of action arose out of the defendant's contacts with the forum state—will be dispositive. *Markby v. St. Anthony Hosp. Sys.*, 647 P.2d 1068 (Wyo. 1982).

Wyoming for Cody's support, transportation, and college expenses. However, Mr. McDonald did not purposefully establish contacts with Wyoming. His contacts with the state arose solely because Ms. O'Bryan, as the custodial parent, chose to move to Wyoming with Cody and because Cody chose to remain in Wyoming to attend college. To find personal jurisdiction on this basis could arbitrarily subject one parent to suit in any state of the union where the custodial parent chooses to live. *See Kulko,* 436 U.S. at 93, 98 S.Ct. at 1697. The quality and nature of the transaction alleged here was, with respect to Wyoming, so random and fortuitous that we cannot say Mr. McDonald should have anticipated being haled into a Wyoming court.

Ms. O'Bryan and Cody failed to establish by a preponderance of the evidence that Mr. McDonald had sufficient contacts with Wyoming to require him to defend a lawsuit here. Therefore, the district court's order is affirmed.