Argued and submitted June 10, 2019, reversed and remanded July 15, petition for review denied November 19, 2020 (367 Or 257)

CERNER MIDDLE EAST LIMITED,
a Cayman Islands exempted company,
*Plaintiff-Appellant,*

*v.*

BELBADI ENTERPRISES LLC,
a U.A.E. Limited Liability Company;
and Orland Ltd.,
*Defendants-Respondents.*

Multnomah County Circuit Court
16CV23150; A166877

472 P3d 299

Plaintiff Cerner Middle East Limited appeals a judgment dismissing for lack of personal jurisdiction its action to enforce two guarantees executed by defendant Belbadi Enterprises LLC, a limited liability company organized under the laws of the United Arab Emirates, and to attach property in Oregon owned by Belbadi's Oregon affiliate, defendant Orland, which, plaintiff alleges, Belbadi provided as security for the guarantees. *Held*: Plaintiff's complaint and accompanying affidavits have alleged sufficient facts to make a *prima facie* showing that Belbadi and Orland are alter egos, so as to support a piercing of the corporate veils for the purpose of establishing personal jurisdiction over Belbadi through Orland. The trial court therefore erred in granting defendants' motion to dismiss. On remand, the trial court will have the opportunity to address in the first instance Belbadi's contentions regarding *forum non conveniens*.

Reversed and remanded.

Stephen K. Bushong, Judge. (Judgment)

Adrienne C. Nelson, Judge. (Order)

Warren E. Gluck, New York, argued the cause for appellant. Also on the briefs were David J. Elkanich, Garrett S. Garfield, and Holland & Knight LLP.

Gary I. Grenley argued the cause for respondents. Also on the brief were Paul H. Trinchero, Eryn Karpinski Hoerster, and Garvey Schubert Barer, P.C.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

ARMSTRONG, P. J.

Reversed and remanded.

**ARMSTRONG, P. J.**

Plaintiff Cerner Middle East Limited, a medical technology company incorporated and organized under the laws of the Cayman Islands with its primary place of business in Missouri, appeals a judgment dismissing for lack of jurisdiction its action to enforce two guarantees executed by defendant Belbadi Enterprises LLC, a limited liability company organized under the laws of the United Arab Emirates, and to attach property provided as security for the guarantees. We conclude that the trial court erred in dismissing the action and therefore reverse.

The dispute in this case centers around whether a court in Oregon has jurisdiction over Belbadi, a foreign company, because of the presence in Oregon of a Belbadi affiliate owned by Belbadi's wholly owned subsidiary. We draw the relevant facts from the pleadings and affidavits, construing the pleadings and affidavits liberally in favor of jurisdiction and assuming the truth of all well-pleaded allegations. *O'Neil v. Martin*, 258 Or App 819, 828, 312 P3d 538 (2013) (in reviewing a trial court's grant of a motion to dismiss for lack of personal jurisdiction, we assume the truth of all well-pleaded allegations in the record and construe the pleadings liberally in support of jurisdiction).

Ahmed Saeed Mohammed Al Badi Al Dhaheri (Al Dhaheri), a citizen of the United Arab Emirates (UAE), was the sole proprietor of iCapital. Al Dhaheri happens also to be the former Minister of Health of the Abu Dhabi Emirate. iCapital entered into a contract with the Ministry of Health of the UAE for the development of a medical information technology platform for hospitals in the UAE. In July 2008, iCapital, in turn, entered into a contract with plaintiff Cerner, a medical information technology developer,[1] to provide the software and services necessary for the development of the platform. The contract is known by the parties as the Cerner Business Agreement (CBA).

---

[1] Plaintiff is a subsidiary of Cerner Corporation, a medical services technology company based in Kansas City, Missouri. *See Cerner Middle East Ltd. v. Belbadi Enters. LLC*, 939 F3d 1009, 1011 (9th Cir 2019).

Plaintiff embarked on work under the CBA, but iCapital, now reorganized as an LLC,[2] defaulted on its obligations to plaintiff. As provided in the CBA, plaintiff requested arbitration of the dispute with iCapital and Al Dhaheri before the International Chamber of Commerce International Court of Arbitration (ICC). Before an answer had been filed, plaintiff, Al Dhaheri, and iCapital reached a settlement.

Al Dhaheri is the sole member of iCapital's parent, defendant Belbadi Enterprises LLC, a UAE corporation with its principal place of business in Abu Dhabi, UAE. Under the settlement agreement, Al Dhaheri agreed that Belbadi would "irrevocably and unconditionally" guarantee iCapital's performance under the CBA through two guarantees. If iCapital defaulted on its obligations under the CBA or the settlement agreement, Belbadi unconditionally agreed to make payments to plaintiff "to the fullest extent permitted by law and until all of the Guaranteed Obligations have been fully performed." Belbadi waived "all rights and benefits which might otherwise have been available to [Belbadi] with respect to either or both of the Settlement Agreement and this Guarantee under applicable laws of suretyship and guarantor's defense generally."[3] It is undisputed that Belbadi agreed to securitize the guarantees.

Belbadi, through other companies, owns Willamette Enterprises, Ltd., a company incorporated in the Cayman Islands. Willamette Enterprises, Ltd., owns Vandevco Limited, which, through its subsidiaries (the "VanSubs"),

---

[2] iCapital's members are Ahmed Saeed Al Badi Al Dhaheri and his son, Mohamed Al Badi Al Dhaheri, both citizens of the UAE.

[3] The guarantees also provide, "Each Party hereby expressly consents to the jurisdiction of a competent court in the Emirate of Abu Dhabi for the adjudication of any dispute [related to the guarantees]." The trial court determined that that provision means that jurisdiction of the dispute on the guarantees is exclusively in the UAE. The parties now agree that the provision only provides consent to jurisdiction in the UAE but does not provide for exclusive jurisdiction in the UAE and does not preclude jurisdiction in the courts of other forums. Defendants nonetheless assert that the trial court's ruling dismissing the action on jurisdictional grounds was correct for other reasons asserted on appeal. Plaintiff does not dispute that the alternative grounds for affirmance were argued by the parties at trial and should be addressed on appeal. *See State v. Lovaina-Burmadez*, 257 Or App 1, 14, 303 P3d 988, *rev den*, 354 Or 148 (2013) (concerning alternative bases to affirm that were argued but not decided in the trial court).

owns Vancouvercenter, a multiuse residential and commercial development in Vancouver, Washington.

Willamette Enterprises, Ltd. also owns Orland Ltd., an Oregon corporation formed in 1996. In 1999, Orland registered "Vancouvercenter" as an assumed business name in Oregon. But Orland's assets consist only of six residential properties in Tigard, Oregon, that Orland acquired in 1996 and 1997 for the purpose of further development. Because Orland is nominally owned by Willamette Enterprises, Ltd., which, in turn, is ultimately owned by Belbadi, Belbadi is Orland's parent, just as Belbadi is Vandevco's parent.

Within months of the settlement agreement, iCapital defaulted on its obligations. Plaintiff then pursued arbitration with the ICC, which entered an award of over $62 million for plaintiff and against iCapital, and jointly and severally against Al Dhaheri, who, the ICC determined, was iCapital's alter ego. Neither iCapital nor Al Dhaheri has paid anything toward the arbitration award. Additionally, an Abu Dhabi appellate court upheld a lower court judgment establishing iCapital's and Al Dhaheri's liability to plaintiff and approving plaintiff's provisional seizure of iCapital's assets held by third parties.

In its complaint here, plaintiff alleges that iCapital's default triggered Belbadi's obligation on the guarantees, which Belbadi has not honored. Plaintiff brought this action in Oregon against Belbadi and Orland for breach of the guarantees, for prejudgment attachment of Orland's shares as security for the guarantees, and to foreclose on the security. Plaintiff's complaint alleges that, in agreeing to the guarantees, plaintiff relied on Belbadi's ownership of assets outside of the UAE and plaintiff's alleged right under the guarantees to seize those assets.[4]

_____

[4] Plaintiff asserts that Belbadi agreed to securitize the guarantees with its global assets, as evidenced by a clause in the settlement agreement that authorizes plaintiff "without notice [or] demand and without affecting Guarantor's liability hereunder, from time to time to," among other things,

"take and hold security for the payment of [the guarantees] or the Guaranteed Obligations, and exchange, enforce, waive or release any such security or any part thereof, and apply any such security and direct the order or manner of sale thereof as [plaintiff] in its sole and absolute discretion may determine."

The guarantees further provide that plaintiff may,

Plaintiff also sought and obtained a temporary restraining order to prevent Belbadi or Orland from selling or otherwise transferring interests in or assets of Orland in a way that would devalue its shares. Belbadi does not reside in Oregon, does not directly own property in Oregon or do business in Oregon, and has not been served with process in this action.[5]

The trial court granted defendants' motion to dismiss plaintiff's claim for lack of personal jurisdiction over Belbadi, and plaintiff challenges that ruling on appeal. We review the trial court's ruling for legal error. *Kotera v. Daioh Int'l U.S.A. Corp.*, 179 Or App 253, 262, 40 P3d 506 (2002) (trial court's dismissal of complaint for lack of personal jurisdiction reviewed for legal error).

As relevant here, ORCP 4 provides:

"A court of this state having jurisdiction of the subject matter has jurisdiction over a party served in an action pursuant to Rule 7 under any of the following circumstances:

"A Local presence or status. In any action, whether arising within or without this state, against a defendant who when the action is commenced:

"* * * * *

"A(3)   Is a corporation created by or under the laws of this state[.]"

It is undisputed that Orland, an Oregon corporation, is subject to the court's jurisdiction under ORCP 4 (A)(3). Plaintiff

---

"at its election, exercise any right or remedy it may have against iCapital or any security held by plaintiff, including without limitation the right to foreclose upon any such security by judicial or non-judicial sale."

Moreover, Belbadi

"waive[d] to the fullest extent permitted by law and until all Guaranteed Obligations have been fully performed, all rights and benefits which might otherwise have been available to [Belbadi] with respect to [the guarantees] under applicable law of suretyship and guarantor's defenses generally."

The guarantees state that they are breached if Belbadi

"ceases to carry on all or any substantial part of its business, or changes the nature or scope of its business to a material extent, or disposes of all or any substantial part of its business or assets or proposes to do any of the foregoing."

[5] Plaintiff has been unable to serve Belbadi.

asserts that Oregon's statutory personal jurisdiction extends, *in personam*, through Orland to Belbadi, because Belbadi, along with all of the Belbadi affiliates, is Orland's "alter ego"—that is, they are one in the same. If Belbadi and Orland are alter egos, then jurisdiction over Belbadi derives from the court's jurisdiction over Orland. *See Rice v. Oriental Fireworks Co.*, 75 Or App 627, 632, 707 P2d 1250 (1985), *rev den*, 300 Or 546 (1986) (a corporation's identity may be disregarded for purposes of maintaining jurisdiction over a controlling shareholder).

Plaintiff also asserts that the court has jurisdiction over Belbadi for enforcement of the guarantees on a theory of *quasi-in-rem* jurisdiction, through which the presence of Belbadi's assets in the state would allow for jurisdiction up to the value of the property. *Hobgood v. Sylvester*, 242 Or 162, 165, 408 P2d 925 (1965) ("The underlying theory of *quasi-in-rem* jurisdiction does not contemplate a typical personal judgment against the defendant, but only a judgment to the extent of the defendant's property within the state."). Because it is dispositive, we address only plaintiff's contentions relating to *in personam* jurisdiction under ORCP 4 (A)(3) and do not reach plaintiff's contentions relating to *quasi-in-rem* jurisdiction.

Belbadi, organized under the laws of the UAE, is a separate entity from Orland and does not directly own property or have a physical presence in Oregon, except that it does, ultimately, own Orland. Plaintiff's *in personam* jurisdiction argument depends first on a showing of a unity of identity of Belbadi and Orland. In addition to a unity of identity, plaintiff asserts that, based on Belbadi's alleged conduct toward Orland and among its other affiliates, Belbadi has lost its right to rely on its separate limited liability identity to shield it from jurisdiction and liability, that the corporate and limited liability veils of Orland and Belbadi should be pierced, and that jurisdiction in Oregon should lie based on Belbadi's presence through Orland.[6]

---

[6] Belbadi is a limited liability company. "In Oregon, the doctrine of corporate veil piercing applies to LLCs in the same way that it does to corporations." *Sterlings Savings Bank v. Emerald Development*, 266 Or App 312, 341, 388 P3d 719 (2014).

We have previously held that *in personam* jurisdiction can arise based on a defendant's presence in Oregon through a corporate alter ego. In *Rice*, the plaintiff was injured while discharging fireworks distributed by Chou, a resident of Maryland, and Chou's Maryland corporation, J.C. Oriental Fireworks, Inc. 75 Or App at 629. It was undisputed that the corporation had sufficient ties in Oregon for personal jurisdiction. The question was whether Chou also could be subject to personal jurisdiction in an Oregon court. *Id.* We first addressed and rejected the plaintiff's contention that Chou's contacts with Oregon gave rise to jurisdiction under ORCP 4 L, Oregon's "long arm" jurisdictional provision, which extends jurisdiction in "any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States." 75 Or App at 630. We then addressed the plaintiff's contention that *in personam* jurisdiction should lie through Chou's relationship with J.C. Oriental Fireworks, Inc., and a disregard of the corporate identity. *Id.* We recognized that, in deciding whether Chou should be required to appear and answer personally because of his relationship with the corporation, the appropriate criteria were the same as those that apply for the purpose of imposing personal liability against a corporation's shareholders: (1) that another entity actually controlled, or was under common control with, the corporation; (2) that the other entity used its control over the corporation to engage in improper conduct; and (3) that, as a result of the improper conduct, the plaintiff was harmed. *Id.* at 623 (citing *Amfac Foods v. Int'l Systems*, 294 Or 94, 103, 654 P2d 1092 (1982)).[7]

---

[7] Federal courts also recognizes the concept of "alter ego" as a means of obtaining jurisdiction over an out-of-state corporate entity. In *Doe v. Unocal Corp.*, 248 F3d 915, 926 (9th Cir 2001), the court stated:

"To demonstrate that the parent and subsidiary are 'not really separate entities' and satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.' *American Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (citations omitted). The first prong of this test has alternately been stated as requiring a showing that the parent controls the subsidiary 'to such a degree as to render the latter the mere instrumentality of the former.' *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)."

We reasoned, however, that a party seeking to defeat a motion to dismiss based on a lack of personal jurisdiction need only make a *prima facie* showing—that is, the presentation of evidence from which the facts necessary to meet those criteria could be found. *Id.* In *Rice*, we concluded that the evidence supported disregarding the corporate identity of Oriental Fireworks. First, the plaintiff had presented *prima facie* evidence of control: Chou and his wife each owned a half interest in the corporation, Chou was its president and treasurer, Chou's wife was its vice-president, and Chou's attorney was its secretary. Moreover, Chou had complete control over director decisions. Second, the plaintiff had presented a *prima facie* case of improper conduct through the disregard of corporate roles and formalities and an undercapitalization of the corporation. *Id.* at 633-34. Finally, we concluded that the improper conduct of undercapitalization had resulted in the plaintiff having an inadequate remedy against the corporation. *Id.* at 634.

Here, as the party seeking to invoke the trial court's jurisdiction, plaintiff had the burden to come forward with facts sufficient to establish jurisdiction. *Portland Trailer & Equipment v. A-1 Freeman Moving*, 166 Or App 651, 654, 5 P3d 604, *adh'd to as modified on recons*, 168 Or App 654, 4 P3d 741 (2000). In ruling on a motion to dismiss for lack of personal jurisdiction under ORCP 21 A(2), the trial court could consider the facts drawn from the complaint and matters outside the pleading, including affidavits, declarations, and other evidence. *Sutherland v. Brennan*, 131 Or App 25, 28, 883 P2d 1318 (1994), *aff'd on other grounds*, 321 Or 520, 901 P2d 240 (1995). The pleadings and affidavits are to be construed liberally in favor of jurisdiction, and all well-pleaded allegations are assumed to be true. *Ram Technical Services, Inc. v. Koresko*, 240 Or App 620, 636, 247 P3d 1251 (2011); *Kotera*, 179 Or App at 262. To establish its theory of *in personam* personal jurisdiction on an alter ego theory, plaintiff needed only to present *prima facie* evidence in support of the theory. *Rice*, 75 Or App at 632 (the party seeking to establish personal jurisdiction need only make a *prima facie* showing, through affidavits and supporting materials, of the facts necessary to meet the criteria for establishing piercing the corporate veil based on alter ego). The trial

court concluded that plaintiff had not made a *prima facie* showing of jurisdiction in support of that theory.

A *prima facie* showing is made by presenting facts that, if true, are sufficient to allow a factfinder to make the necessary findings supporting jurisdiction. *Aero Planning International, Inc. v. Air Associates, Inc.*, 94 Or App 143, 764 P2d 610 (1988). Whether plaintiff has made a *prima facie* showing is a legal question. *Clark and Clark*, 171 Or App 205, 210, 14 P3d 667 (2000) ("The determination of whether the essential elements of a claim have been established— in other words, whether a *prima facie* case was made—is a question of law."). We have reviewed the record and agree with plaintiff that plaintiff's pleadings and affidavits have presented sufficient facts to make a *prima facie* case of *in personam* jurisdiction over Belbadi, based on a unity of identity of Orland and the Belbadi affiliates.

Plaintiff's complaint alleges generally:

"Notwithstanding their formal separate incorporation, Orland *** and Belbadi actually constitute a single business enterprise pursuing their business objectives through nominally separate business structures, all of which are dominated and controlled by the principal Belbadi, Al Daheri [the sole shareholder of Belbadi] and his close friend and business associate Ziad El Hindi ('Ziad') [the CEO of Belbadi]. These entities maintain overlapping (and sole) ownership, control, employees and management."

Plaintiff's complaint alleges that, just as it has been determined through arbitration that iCapital and Al Dhaheri are alter egos, the evidence concerning Al Dhaheri's ownership, control, intermingling, and misuse of corporate assets shows that Belbadi and Al Dhaheri are alter egos, as are Belbadi and Orland. Plaintiff alleges that all of the affiliates are, in essence, one in the same, notwithstanding their separate legal forms.

Plaintiff supports its general allegations with specific allegations. As to evidence of Belbadi's control of Orland, plaintiff alleges: Ziad Elhindi, Al Dhaheri's close personal friend and business associate, is the CEO of Belbadi. Elhindi is also the president, vice-president, treasurer, secretary, and chairman of the board of directors of Vandevco,

and is the president and secretary of Orland. Despite their separate corporate identities, Belbadi has held itself out as the owner of Vandevco. Belbadi's website listed "Vancouver Center, Vancouver, Oregon [*sic*]," among its existing real estate development projects. Correspondence with the City of Vancouver from Elhindi relating to the Vancouvercenter refer to the "Belbadi Group" as "owners and developers of Vancouvercenter." Finally, bank records show liberal transfers of funds to, from, and among Al Dhaheri-owned affiliates, including Orland, and transfers disregarding corporate forms and formalities from affiliates to Al Dhaheri's bank accounts and to friends and family members of Al Dhaheri for nonbusiness purposes. Those allegations allow an inference that, despite their separate corporate forms, there is a unity of identity and control of the Belbadi affiliates and Al Dhaheri. *See State ex rel Neidig v. Superior National Ins. Co.*, 343 Or 434, 455, 173 P3d 123 (2007) (merely affiliated companies can be alter egos of one another).

Specifically with regard to Belbadi's control of Orland, the complaint alleges that Orland, whose only asset at the relevant time was six residential lots, has received millions of dollars in wire transfers from or on behalf of Belbadi affiliates. For example, Orland received wire transfers totaling $638,000 from Vancouvercenter Development LLC, a VanSub, with only one transfer including the notation "loan." In December 2015, Orland received two wire transfers totaling $1,901,299.13 from a title company stating that they are "FBO [for benefit of] Orland Ltd and Vandevco Limited Wire for Orland Ltd." Orland's bank account received funds for legal fees directly from Belbadi. Belbadi sent Orland four wire transfers totaling $110,000 for "Trade Purposes." Additionally, as noted, the management of Orland is united with the management of Belbadi, through Elhindi. We conclude that the complaint alleges sufficient facts from which the court could find an identity of control of Orland and Belbadi and the Belbadi affiliates.

The complaint also alleges sufficient facts from which the court could find improper conduct by and among Belbadi affiliates, including Orland, through the commingling of their businesses. For example, the wire transfers

made without regard for corporate forms allow an inference of commingling. Additionally, plaintiff presented evidence from which a factfinder could infer that Al Dhaheri has used the commingled corporate assets for personal expenses. *See Amfac Foods, Inc.*, 294 Or at 110 ("confusion and commingling of assets" and "milking" of a corporation are examples of improper conduct). Plaintiff alleges that bank records show that at least 20 percent of transfers from Balbadi were for Al Dhaheri's personal use, including transfers to family members and friends for such things as medical expenses, funeral expenses, monthly allowances, mortgage payments on a property owned in Al Dhaheri's name, camping trips, holiday vacations, Caribbean apartments, and college tuition. *See Rice*, 75 Or App at 632 (it is improper conduct to disregard corporate roles and formalities that serve to protect the rights and define the responsibilities of owners, directors, officers, employees, creditors, government entities, and the public at large.) A factfinder could infer that the significant transfers to Orland from Belbadi and affiliates or to Al Dhaheri from Belbadi affiliates had no legitimate business purpose and were therefore improper.

Contrary to defendants' contention, the improper conduct need not have been directed specifically to plaintiff. Plaintiff need only allege facts that show a relationship between the misconduct and plaintiff's harm. *See Rice*, 75 Or App at 633; *Amfac Foods*, 294 Or at 109 (shareholder's conduct must have been improper either in relation to the plaintiff's entering the transaction in which the debt was incurred or in preventing or "interfering with the corporation's performance or ability to perform its obligations toward the plaintiff"). The complaint alleges facts that permit an inference that plaintiff was harmed by the conduct of Belbadi and Belbadi's affiliates through the intermingling and diversion of funds that would otherwise have been available to plaintiff to satisfy Belbadi's obligations under the guarantees. *See State ex rel Neidig*, 343 Or at 457 (control must have been exercised "over the specific conduct that led to the plaintiff's harm"). We conclude that plaintiff's complaint has alleged *prima facie* facts that support a piercing of the corporate veil and that are sufficient to survive a motion to dismiss for lack of personal jurisdiction.

Contrary to defendants' contention, the fact that Orland was not a party to the guarantees or involved in the underlying litigation between plaintiff and Belbadi does not preclude a determination, based on *prima facie* evidence, that the Al Dhaheri affiliates, including Belbadi and Orland, are alter egos for the purpose of personal jurisdiction over Belbadi in Oregon. Jurisdiction over Belbadi because of its presence in Oregon as the alter ego of Orland does not depend on Orland's involvement with the guarantees or the underlying litigation.

In view of our conclusion that an Oregon court has *in personam* jurisdiction over Belbadi through Orland, we need not address plaintiff's alternative contention that an Oregon court has *quasi-in-rem* jurisdiction.

Having disposed of plaintiff's complaint for lack of jurisdiction, the trial court did not address defendants' contentions regarding *forum non conveniens*. Defendants ask that we address that issue on appeal, but it involves factual determinations that are more appropriately addressed by the trial court in the first instance on remand. *See Espinoza v. Evergreen Helicopters, Inc*, 359 Or 63, 81, 376 P3d 960 (2016).

Reversed and remanded.