**AMOCO PRODUCTION COMPANY,**
Appellant (Plaintiff),

v.

**EM NOMINEE PARTNERSHIP COMPA-NY, a/k/a Energy Methods Nominee Partnership ·Company, a Colorado Partnership, Hallwood Energy, Inc., and E.D.P. Operating, Ltd., Appellees (Defendants).**

No. 94–76.

Supreme Court of Wyoming.

Dec. 2, 1994.

David D. Uchner, Cheyenne, Peter A. Bjork and Gregory R. Danielson of Bjork, Seavy, Lindley & Danielson, Denver, CO, for appellant.

J. Kent Rutledge, Cheyenne, Thomas J. Kimmell, Englewood, CO, for appellees.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

LEHMAN, Justice.

This appeal is the result of a dismissal by the district court of an action by Amoco Production Company against EM Nominee Partnership Company, et al. on the grounds that the State of Wyoming lacked personal jurisdiction over the defendant.

We reverse.

A single issue is presented for review: Whether the Trial Court properly concluded that the Defendants lacked sufficient minimum contacts so as not to be properly subject to in personam jurisdiction in the State of Wyoming.

## I. FACTS

The plaintiff, Amoco Production Company (Amoco), is the owner of a leasehold working interest covering lands in Sweetwater County, Wyoming. The leasehold was the subject of a Brady (Deep) Unit Agreement, which dictated the allocation of royalties within the unit. The defendants, EM Nominee Partnership Company a/k/a Energy Methods Nominee Partnership Company, Hallwood Energy, Inc., and E.D.P. Operating, Ltd. (collectively EM), own an overriding royalty interest on land which was initially within the unit. EM acquired the interest as part of a purchase from G.L.M. Oil and Gas Company in 1984. As the working interest owner, Amoco remitted to EM its royalty payments.

On May 2, 1989, the Bureau of Land Management reduced the unit size, resulting in the exclusion of the land on which EM's royalty belonged. The BLM's decision was made effective March 1, 1985. Amoco then requested reimbursement of the royalties paid between March 1, 1985, and May 2, 1989, pursuant to the terms of the unit agreement. EM declined to return the money, and Amoco filed this suit in Sweetwater County raising claims of breach of contract, unjust enrichment and conversion.

EM moved to dismiss based on a lack of personal jurisdiction. The district court reviewed the parties' contacts with this state and found the following: EM is not conducting business and has never conducted business in Wyoming; it has no offices, agents or employees here; the only property owned in Wyoming by EM is the overriding royalty interest at issue here; the contracts relating to this matter were not executed or entered into in Wyoming; the royalties were paid out of Amoco's Tulsa, Oklahoma office and sent to EM's office in Denver; and EM is not currently receiving any payments attributable to the royalty interest. The district court then concluded:

> This cause of action has very little to do with any of defendants' local activities, since there are essentially none. Defendants' activities in Wyoming, as related to this case, cannot properly be described as "substantial," "important," "extensive," or "significant." The consequences of defendants' activities within Wyoming are negligible. Thus, this cause of action does not arise from the consequences in Wyoming of the defendants' actions. Further, the activities of defendants and the consequences of these activities do not have a substantial connection with Wyoming to

make the exercise of jurisdiction over these defendants reasonable.

EM's motion to dismiss was granted, and Amoco now appeals.

## II. DISCUSSION

The courts of Wyoming are authorized by statute to exercise personal jurisdiction over defendants on any basis which is not inconsistent with the Wyoming or United States constitutions. W.S. 5–1–107(a) (1977). So long as the exercise of jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the courts of this state have jurisdiction over a defendant. *Markby v. St. Anthony Hosp. Sys.*, 647 P.2d 1068, 1070 (Wyo.1982).

■ Due process requires that the defendant have certain "minimum contacts" with the forum state such that the exercise of jurisdiction over him does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Markby*, 647 P.2d at 1070. In *First Wyoming Bank, N.A., Rawlins v. Trans Mountain Sales & Leasing, Inc.*, we adopted a three-part test for defining the outer limits of personal jurisdiction based on a single act:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

602 P.2d 1219, 1221 (Wyo.1979) (quoting *State ex rel. White Lumber Sales, Inc. v. Sulmonetti*, 252 Or. 121, 448 P.2d 571, 574 (1968)); see also *Markby*, 647 P.2d at 1073. The determination of whether the exercise of jurisdiction is reasonable must be evaluated in light of several factors, including the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining effective relief in a conve-

nient forum if that interest cannot be adequately protected by his power to select the forum, the interstate judicial system's interest in the efficient resolution of conflicts, and in the shared interests of the states in furthering fundamental substantive social policies. *Markby*, 647 P.2d at 1073 (quoting *World–Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)); see also *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113–14, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required" if the defendant has purposefully availed himself of the privilege of acting in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).

■ The burden is on the plaintiff, once the defendant has contested the court's jurisdiction over him, to make a prima facie showing that the defendant is subject to personal jurisdiction in the state. *McAvoy v. Dist. Court*, 757 P.2d 633, 634 (Colo.1988); *Allen v. Columbia Financial Management, Ltd.*, 297 S.C. 481, 377 S.E.2d 352, 354 (S.C.App.1988); see *Morrison v. Reilly*, 511 P.2d 970, 972 (Wyo.1973) (burden of proof is on party asserting affirmative of any issue). The court may consider any allegations set forth in the complaint and any evidence which may be introduced in a hearing on the issue. *McAvoy*, 757 P.2d at 634–35. The defendant then must present a compelling case that the presence of some other considerations would make the exercise of jurisdiction unreasonable. *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184–85.

■ The United States Supreme Court has distinguished between "general" and "specific" personal jurisdiction. "Specific" jurisdiction is when a state exercises jurisdiction over a defendant in a suit arising out of or related to that defendant's contacts with the forum. *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872, n. 8, 80 L.Ed.2d 404 (1984); see *Eddy v. Oukrop*, 784 P.2d 610,

612–14 (Wyo.1989) (jurisdiction exercised over defendants because suit arose out of defendants' contacts with Wyoming). In contrast, "general" jurisdiction is when a state exercises jurisdiction over the defendant in a suit not arising out of or related to that defendant's contacts with the state. *Helicopteros Nacionales*, 466 U.S. at 414 n. 9, 104 S.Ct. at 1872; see *Markby*, 647 P.2d at 1074 (defendant's contacts with the state not sufficient to create personal jurisdiction in Wyoming where defendant's contacts with the state were not related to the suit). Even if a single act arises out of or is related to the suit, a state may not have jurisdiction if the nature of the act creates only an "attenuated" connection with the forum. *Burger King*, 471 U.S. at 475 n. 18, 105 S.Ct. at 2184 n. 8.

■ In the instant case, EM has two contacts with the State of Wyoming. First, it owns an interest in real property in Sweetwater County. *Connaghan v. Eighty–Eight Oil Co.*, 750 P.2d 1321, 1324 (Wyo.1988) (overriding royalty interest is an interest in land). Second, as alleged by Amoco in its complaint, EM became a party to the unit agreement when it purchased its royalty interest. The basis of Amoco's cause of action is that EM breached the unit agreement when it refused to reimburse Amoco for the royalties paid to it during the time period when the unit was retroactively reduced in size. Thus, Amoco's suit clearly "arises out of" one of EM's contacts with Wyoming—the unit agreement. EM's other contact with Wyoming is "related to" Amoco's suit in the sense that the overriding royalty interest is the subject matter of the contract. Amoco is, therefore, asserting "specific" personal jurisdiction; and we now confront the question of whether EM's contacts are sufficient for this state's courts to exercise personal jurisdiction over it.

### *Whether EM purposefully availed itself of the privilege of acting in Wyoming or caused important consequences in the state.*

Amoco insists that EM has purposefully availed itself of acting in Wyoming by purchasing an interest in land here and by accepting benefits (the royalties) under the unit agreement. EM, on the other hand, argues that it did not purposefully avail itself of acting in Wyoming because its ownership of the royalty was completely passive—all it did was accept payments, nothing more. EM claims that ownership of property is not, by itself, sufficient to justify Wyoming exercising jurisdiction over it.

We have little trouble in finding that EM purposefully availed itself of the privilege of acting in Wyoming. First, EM voluntarily purchased an interest in land in this state. EM also accepted the benefits of that ownership in the form of the royalty payments. The fact that the payments were not made in Wyoming but instead were paid by Amoco's Tulsa, Oklahoma office to EM's Denver office, is irrelevant. The payments were earned in Wyoming and were based on oil and gas production which occurred here.

EM relies on our decision in *Anderson v. Perry*, 667 P.2d 1155 (Wyo.1983) in arguing that passive ownership is not sufficient to justify jurisdiction, rather the owner must somehow actively manage the property. We think EM's reliance is misplaced. While the finding of jurisdiction in that case was based, at least in part, on the defendant's hiring of an agent in Wyoming to manage the property, that was not the determinative factor. *Anderson*, 667 P.2d at 1158. Jurisdiction in *Anderson* was primarily based upon the existence of a contract to purchase real property in Wyoming. Several cases were cited by this court in *Anderson* which support the assertion of jurisdiction over a foreign defendant based on a contract and the associated consequences of that contract in the forum state. *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11 (1974) (jurisdiction asserted because contract had consequences in the forum state which defendant should have foreseen despite the fact defendant had no offices, property, agents, representatives or employees in the forum state); see also *Cook Associates, Inc. v. Colonial Broach & Machine Co.*, 14 Ill. App.3d 965, 304 N.E.2d 27 (1973). EM voluntarily undertook actions which clearly establish that it purposefully availed itself of the privilege of acting in Wyoming.

### Did the cause of action arise from the consequences of EM's activities in Wyoming?

This question is easily answered yes. As we have already pointed out, this case involves "specific" personal jurisdiction; Amoco's cause of action "arises out of" the unit agreement to which EM was a party and is "related to" EM's ownership of the royalty interest. *Anderson*, 667 P.2d at 1158, compare *Markby*, 647 P.2d at 1074 (cause of action did not arise out defendant's activities in Wyoming where suit was based on "general" personal jurisdiction). The cause of action asserted in this case has everything to do with EM's local activities.

### Did the activities of EM have a substantial enough connection with Wyoming to make the exercise of jurisdiction reasonable?

Here our decision is guided by what we said in *Anderson:*

> The third factor which must be considered is whether the activities or consequences had a substantial connection with the forum state. In *Dwyer v. District Court, Sixth Judicial District*, 188 Colo. 41, 532 P.2d 725 (1975), which concerned a contract involving real property, the court stated that of utmost importance was the fact that "the subject matter of the contract, the real estate, was located in Colorado thereby making Colorado the state with the greatest interest in the transaction." Id. [532 P.2d] at 727. In the present situation the contract concerns real property located in Wyoming and the covenants are recorded in Wyoming. We hold that this satisfies the "substantial connection" requirement of the test.

667 P.2d at 1158. Similarly, here the contract concerns a royalty interest located in Wyoming which earned EM substantial amounts of money on oil and gas produced in this state. The "substantial connection" requirement is satisfied in this case as well.

Furthermore, the exercise of jurisdiction by Wyoming is reasonable in light of the foregoing discussion for two reasons. First, this state has an interest in both the enforcement of valid contracts performed in this state and in effectuating the parties' intent in regard to those contracts. *Eddy*, 784 P.2d at 613–14. Wyoming has also expressed a strong interest in its natural resources and their production. See W.S. 30–1–101 *et seq.* (laws regulating mines and minerals in Wyoming). The owners of royalties have even been provided with special protection. See W.S. 30–5–301 to –303. Second, EM voluntarily bought property and entered into a contract which was performed in this state and benefitted substantially from that relationship. It cannot now complain, when that very relationship is the subject of a suit in this state, that the exercise of jurisdiction by Wyoming is unreasonable. EM's contacts with Wyoming are not "attenuated" but are substantial; therefore, the exercise of personal jurisdiction by this state is reasonable.

### III. CONCLUSION

EM purposefully availed itself of the privilege of acting in Wyoming, its activities in this state are related to the suit, and its contacts with Wyoming are substantial, making the exercise of jurisdiction over it by the State of Wyoming reasonable.

Reversed.