**Eleanor ADKINS, Appellant (Plaintiff),**

v.

**Gayle Marie LAWSON, Executrix of the Estate of Walter William Washut, Appellee (Defendant).**

**No. 94–176.**

Supreme Court of Wyoming.

March 17, 1995.

Hardy H. Tate, Sheridan, for appellant.

Anthony T. Wendtland of Davis and Cannon, Sheridan, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellant Eleanor Adkins appeals from an order which granted a partial summary judgment in favor of Appellee Gayle Lawson, the executrix of the estate of Walter Washut (the estate). Adkins was seeking compensation for the work and services she had performed over a period of several years for Washut.

We affirm.

**Issues**

Adkins presents four issues:

I. Does the requirement of the Dead Man Statute for corroboration of evidence come into play in the Summary Judgment stage in a proceeding?

II. Do the facts presented regarding the services performed by the appellant at the request of and on behalf of the decedent present a valid *quantum meruit* claim under Wyoming law?

III. Do the facts presented regarding oral promises to leave everything in a will and provide for the plaintiff present a valid express contract claim under Wyoming law?

IV. Do the facts presented regarding livestock partnership present a valid claim under Wyoming law?

### Facts

Adkins and Washut began dating in 1975. A few months later, Washut asked Adkins to marry him, but she refused his proposal. In 1980, after he had suffered a heart attack and had become unable to care for himself, Washut asked Adkins to move to his ranch located outside of Sheridan. Adkins agreed to do so and moved to the ranch where she began living with Washut seven days a week. Several of Adkins's children and grandchildren also occasionally lived at the ranch. Even though Adkins lived with Washut at the ranch, she kept her house in Sheridan and continued to work full time at her jobs in Sheridan.

When Adkins was not working at her jobs, she performed various services for Washut. She gave the following examples of the services which she performed:

I took total care of all stock. I had to feed, water, pull them in from the pasture. I did the baling. I drove his tractor. If he had to take a bath, I take him and give him a bath. If he shaved, I had to shave him. He chose not to unless I did it for him. I cooked the meals. The meals were ready and available at times. I set his prescriptions. I set his shots. I took him to the VA; I brought him home; went for rides at his request. Essentially, anything that needed to be done that he did not feel—or feel up to at that point, I did.

Adkins also cleaned Washut's house, cleaned up messes which he made because of his lack of control of his bladder and his bowels, helped him operate his wild game processing business, worked in his garden, painted the trim on his house, and bought and washed his clothes. In addition, Adkins's children and grandchildren performed chores at the ranch.

Adkins did not charge Washut for the services which she performed, and she did not maintain a record of the hours she spent working for him at the ranch. She also did not pay for utilities at the ranch, and she did not pay rent to Washut. While Adkins lived at the ranch, she and Washut slept in separate bedrooms, but they had a loving relationship, and they "shared more than most couples that were married." According to Adkins, Washut told her on numerous occasions that "everything would be taken care of" and that she would never have to leave the ranch. Adkins, however, admitted that her motivation for performing the services for Washut was that she loved him and cared for him.

Washut died in September 1992. His Last Will and Testament contained only one clause which pertained to Adkins: "I give, bequeath and devise, to my friend, Elly Adkins, ten (10) cows of her choosing from the cattle I own at the time of my death."

Adkins filed a complaint in which she asserted four claims against the estate: (1) that Washut was indebted to Adkins for services which she had rendered for him; (2) that Washut had promised to reimburse Adkins for her services through his will and that the will failed to provide compensation for her services; (3) that Adkins and Washut jointly owned the livestock on Washut's ranch and that Adkins was entitled to receive a share of the proceeds from the sale of the livestock; and (4) that Adkins had incurred expenses on behalf of Washut after he died. Adkins stipulated that she brought her first claim upon the theory of *quantum meruit* for the services which she had performed and that she based her second claim upon Washut's express promise to compensate her for her services. Adkins did not claim that the will was invalid.

The estate filed an answer in which it generally denied the allegations in Adkins's complaint and asserted several affirmative defenses. The estate also asserted counter-

claims for the value of the services which Washut had performed for Adkins and her children and grandchildren and for the conversion of property which Adkins had removed from the ranch after Washut died.

The estate filed a motion which sought a summary judgment on Adkins's first three claims.[1] The district court granted the estate's motion for a partial summary judgment, and Adkins brought this appeal.

## Standard of Review

■ "Summary judgment is appropriate when no genuine issue of material fact exists and when the prevailing party is entitled to have a judgment as a matter of law." *Sandstrom v. Sandstrom*, 884 P.2d 968, 971 (Wyo. 1994). *See also* W.R.C.P. 56(c).

A genuine issue of material fact exists when a disputed fact, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. The party moving for summary judgment bears the initial burden of establishing a prima facie case for a summary judgment. If the movant carries this burden, the party opposing the summary judgment must come forward with specific facts to demonstrate that a genuine issue of material fact does exist.

*Thunder Hawk by and through Jensen v. Union Pacific Railroad Company*, 844 P.2d 1045, 1047 (Wyo.1992) (citation omitted). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Kilmer v. Citicorp Mortgage, Inc.*, 860 P.2d 1165, 1167 (Wyo. 1993). We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Thunder Hawk by and through Jensen*, 844 P.2d at 1047.

## Dead Man's Statute

In support of its motion for a partial summary judgment, the estate claimed that the statements which Adkins attributed to Washut as being evidence of his intent to compensate her were uncorroborated. The estate argued in part that, under the dead man's statute, WYO.STAT. § 1–12–102 (1988), the uncorroborated statements which Adkins attributed to Washut could not be used as a basis to deny its motion. The district court cited the dead man's statute as being the reason for its decision to grant the partial summary judgment. The dead man's statute states in part:

In an action or suit . . . against a person who from any cause is incapable of testifying, or . . . against a[n] . . . executor . . . of the person incapable of testifying, no judgment . . . founded on uncorroborated testimony shall be rendered in favor of a party whose interests are adverse to the person incapable of testifying or his . . . executor . . . .

Section 1–12–102.

Adkins now claims that the partial summary judgment should be reversed because of our recent holding in *Drake v. Winkler*, 838 P.2d 1177 (Wyo.1992), where we said:

The requirement of corroboration of evidence against a party incapable of testifying under the [dead man's] statute should not come into play at the summary judgment stage. At this point we debate only the existence or nonexistence of material facts surrounding the controversy.

838 P.2d at 1180. Adkins argues that the holding in *Drake* is directly in point and that the partial summary judgment should be reversed. We disagree.

■ The record in this case demonstrates that it is not necessary for us to rely upon the dead man's statute in upholding the partial summary judgment. We will sustain a summary judgment under any legal theory which is properly supported by the record. *Equality Bank of Evansville, Wyoming v. Suomi*, 836 P.2d 325, 328 (Wyo.1992). The next section of this opinion will illustrate that, even without the dead man's statute coming into play at the summary judgment stage, Adkins's statements did not create

1. The parties ultimately settled Adkins's fourth claim and the estate's counterclaims, and the

district court entered an order which dismissed those claims.

material questions of fact which precluded the entry of a summary judgment.

## Unjust Enrichment

Adkins asserts that the partial summary judgment should be reversed because the facts which she presented supported her cause of action for unjust enrichment.

■ The doctrine of unjust enrichment provides for the recovery of damages on a contract implied in equity. *State v. BHP Petroleum Company, Inc.*, 804 P.2d 671, 672 n. 3 (Wyo.1991).

> " 'The phrase "unjust enrichment" is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.' "

*R.O. Corporation v. John H. Bell Iron Mountain Ranch Company*, 781 P.2d 910, 912 (Wyo.1989) (emphasis omitted) (quoting 66 Am.Jur.2d, *Restitution and Implied Contracts* § 3 at 945 (1973)).

804 P.2d at 672–73. A party who is seeking damages on the basis of unjust enrichment must prove four elements:

"(1) Valuable services were rendered, or materials furnished,

"(2) to the party to be charged,

"(3) which services or materials were accepted, used and enjoyed by the party, and,

"(4) under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged.

Without such payment, the party would be unjustly enriched."

*Zitterkopf v. Bradbury*, 783 P.2d 1142, 1144 (Wyo.1989) (quoting *Johnson v. Anderson*, 768 P.2d 18, 25 (Wyo.1989)). *See also Bowles v. Sunrise Home Center, Inc.*, 847 P.2d 1002, 1004 (Wyo.1993).

■ The estate and Adkins do not dispute whether the first three elements have been proven. The estate claims that under the fourth element Adkins cannot recover for unjust enrichment because she cared for Washut in a gratuitous family relationship. We agree.

In its motion for a partial summary judgment, the estate relied in part on Adkins's deposition testimony in which the following colloquy transpired between the attorney for the estate and Adkins:

Q. But the reason you were there and the reason you didn't pay Walt for room and utilities and the reason you helped Walt was because you loved him; isn't that right, Ms. Adkins?

A. That's true. And because he—we had the relationship and he wanted the help.

Q. Your motivation was because you cared for Walt Washut?

A. That's right.

Adkins also stated in her deposition: "I chose [to help Washut] because I loved Walt. And I chose it because he requested it. And we had the relationship that we were very close." By relying upon Adkins's deposition, the estate clearly established that Adkins had performed the services for Washut because she loved him and not because she expected to be paid.

Adkins responded to the estate's motion for a partial summary judgment by filing an affidavit in which she stated in pertinent part:

> Walt Washut and I discussed on many, many occasions the fact that he intended I would have his ranch property when he died and that he would give it to me in consideration of his affection for me and in consideration of the fact that I had nursed him and cared for him for the last twelve years of his life.

In addition, Adkins cited to the part in her deposition where she stated:

I [helped Washut] because of our relationship and because of the fact that he constantly told me that there would be no problem, nobody would ever want anything, and that that was what he wanted me to do.[2]

■ Adkins's statements did not rise to the level of being specific factual evidence which was sufficient to rebut the estate's prima facie case for a summary judgment. Adkins's deposition demonstrated that Washut had no reason to believe that Adkins expected to be paid. The statements in Adkins's affidavits contradicted her deposition. This Court has previously adopted a policy against allowing the party who opposes a motion for a summary judgment to create questions of fact by presenting affidavits which contradict that party's earlier deposition. *Hanna v. Cloud 9, Inc.*, 889 P.2d 529, 533–34 (Wyo.1995); *see also Morris v. Smith*, 837 P.2d 679, 684–85 (Wyo.1992).

## Other Issues

We will not consider the two remaining issues since Adkins does not present any arguments which address them. " 'It is not the function of this court to frame a party's argument. This court has consistently refused to consider positions which are not supported by cogent argument or pertinent authority.' " *McNeiley v. Ayres Jewelry Co.*, 886 P.2d 595, 597 n. 2 (Wyo.1994) (quoting *Campbell v. Department of Family Services*, 881 P.2d 1066, 1069 n. 2 (Wyo.1994) (citations omitted)).

## Conclusion

We hold that the district court did not err when it granted the partial summary judgment in favor of the estate.

Affirmed.

---

2.  Adkins also submitted an affidavit from Washut's treating physician which described the extent of the medical care which Adkins had provided to Washut and another affidavit from herself which merely restated the services which she had performed for Washut.